UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ABDUL HOWARD,

                Plaintiff,

    v.

BONNIE POLLEY, *et al.*,

                Defendants.

Case No. 2:16-cv-01553-MMD-BNW

ORDER

**I.    SUMMARY**

Plaintiff Abdul Howard alleges violations of his First, Eighth and Fourteenth Amendment rights because officials at the Clark County Detention Center ("CCDC"), where he was detained, designated Islam as a "program" instead of a "religion," leading to two adverse consequences, and failed to provide Plaintiff and others similarly situated to him with adequate food during Ramadan 2016. (ECF Nos. 4 (screening the Complaint), 5.) Before the Court is Defendants Bonnie Polley, Mujahid Ramadan, Sheriff Lombardo, Randall Brown, and Robert Garvey's motion for summary judgment (the "Motion").[1] (ECF No. 57.) The Court will grant the Motion as to Plaintiff's First Amendment retaliation claim because Plaintiff has not proffered any evidence that Defendants took any adverse actions against him because of his earlier protected conduct, but deny the Motion as to Plaintiff's Eighth Amendment claim because a material factual dispute exists as to whether Plaintiff and other Muslim detainees participating in Ramadan at CCDC received food adequate to maintain health during Ramadan 2016. The Court also finds Plaintiff's First Amendment religious free exercise and Fourteenth Amendment equal protection claims are claim-precluded.

---

[1] The Court also reviewed Plaintiff's response (ECF No. 59), Defendants' reply (ECF No. 62), and the parties' supplemental briefs (ECF Nos. 67, 68).

## II. BACKGROUND[2]

Plaintiff was detained at CCDC in 2016. (ECF No. 57-1 at 10.) Plaintiff is Muslim. (*Id.* at 6.) CCDC classifies Islam as a "program," while it classifies various disciplines of Christianity and Judaism as "religions." (*Id.* at 13-19; *see also* ECF Nos. 57-3, 57-6 at 8-9.) This distinction has two implications: (1) to participate in Islam's weekly group worship service, Jumu'ah, detainees must submit a request to participate in Islam, which involves a waiting period so that detainees can be screened for security risks, subjecting Muslim detainees to a one-time wait of up to three weeks to begin attending Jumu'ah; and (2) if a Muslim detainee does not attend a Jumu'ah, he can be punished—though a Christian or a Jew is not punished if he misses a service, because their religions are designated as religions. (ECF Nos. 57-1 at 13-15, 59-7 at 1-4, 4 (stating a detainee can be punished for "[r]efusing to attend programs), 59-12 at 2 (stating that inmates are not required to attend religious services).) These claims were raised and litigated in a related case, *Howard v. Polley*, 2:15-cv-01458-APG-VCF (D. Nev. Filed Jul. 30, 2015) (the "1458 Case").

Plaintiff alleges that he and other Muslim detainees at CCDC were given inadequate food to break their evening fast during Ramadan 2016, an allegation which Defendants dispute. (ECF No. 4 at 5.) Muslim detainees ate breakfast as normal, as breakfast is served at CCDC well before sunrise anyway, and were then given a sack meal after sunset to break their fast. (ECF No. 57-1 at 7-9; *see also* ECF No. 59-11 at 2.) The kitchen at CCDC was already done serving dinner by the time the sun would go down during Ramadan. (ECF No. 57-1 at 7-9.) Thus, CCDC's approach was to give Muslim detainees a sack meal they could eat after sundown. (*Id.*) Plaintiff alleges he was given the same, unhealthy sack meal every evening, which did not contain enough calories for him to sustain himself. (ECF No. 4 at 5; *see also* ECF No. 59-2 at 2.) Plaintiff also takes blood pressure medication that makes his stomach sensitive. (*Id.*) Thus, Plaintiff alleges he could not sustain his fasting because the evening meals were inadequate, and was

---
[2]The following facts are undisputed unless otherwise stated.

forced to abandon his Ramadan fast for the first time in his life. (*Id.*) He also alleges his blood pressure medication began burning a hole in his stomach because of his insufficient caloric intake. (*Id.*) As noted, Defendants argue Plaintiff received sufficient calories during Ramadan 2016, and the evening meals were sufficiently nutritious.

In addition, Plaintiff generally asserts Defendants are retaliating against him for the lawsuits and grievances he filed in the past.[3] (ECF No. 4 at 7-8.) Defendants dispute that any of them retaliated, or are retaliating, against Plaintiff. (ECF No. 57 at 10-12.) Plaintiff alleges that he and other Muslim detainees were given insufficient food during Ramadan, and told they would be punished if they were found with food during the day during Ramadan, or failed to attend Jumu'ah, in retaliation for the grievances and lawsuits that Plaintiff filed in the past. (ECF No. 4 at 7-8.) Plaintiff further wrote numerous grievances regarding his treatment as a Muslim detainee at CCDC that generally track the allegations outlined above.

The Court screened Plaintiff's Complaint in this case under the Prison Litigation Reform Act ("PLRA") and allowed four claims to proceed. (ECF No. 4.) The first claim is "[b]ased on the allegations [that] jail officials have categorized Muslim services as a program rather than a religion, have under fed Muslim inmates during Ramadan, and have refused to provide Muslim inmates with prayer rugs." (*Id.* at 7.) The second claim for is First Amendment retaliation based on allegations that some defendants involved in Plaintiff's other lawsuits:

> told Plaintiff that he had been filing grievances for two years and that nothing changed and that nothing would change. As a result, those defendants threatened to punish the Muslim inmates if they chose not to attend the

---

[3]Specifically, Plaintiff successfully sued Defendant Polley in 2003. (ECF No. 57-1 at 5.) Polley was, and is, the religious coordinator at CCDC. (*Id.*; *see also* ECF No. 57-3 at 2.) At the time, CCDC did not offer detainees the option of participating in Jumu'ah. (ECF No. 57-1 at 6.) Plaintiff sued to change that. (*Id.*) Following that lawsuit, CCDC began offering Jumu'ah, and Plaintiff was awarded one dollar in nominal damages. (*Id.*) Plaintiff later filed the 1458 Case, where he challenged the caloric content of the evening sack meals he was provided during Ramadan 2015, and primarily the screening consequence of Islam's designation as a program at CCDC. (*Id.* at 7.)

3

services "program," threatened to send them to segregation if they used blankets as prayer rugs, and under fed them during Ramadan.

(*Id.* at 7-8.) The claim for Eighth Amendment conditions of confinement is based on Plaintiff's allegation that he was not fed enough food during Ramadan 2016 to sustain adequate health. (*Id.* at 8-9.) The Court also allowed a Fourteenth Amendment equal protection claim to proceed:

> Based on the allegations, jail officials treated Muslim services as a program and penalized Muslim inmates who chose not to attend their religious program. On the other hand, jail officials treated Christian and Jewish services as religious services and did not penalize inmates for not attending.

(*Id.* at 9.) The Court later appointed *pro bono* counsel to represent Plaintiff. (ECF No. 25.)

The four claims identified several Defendants.[4] As noted, Polley is CCDC's religious coordinator. Polley is therefore responsible for planning, directing, and supervising all aspects of CCDC's religious programs. (ECF No. 59-12 at 3.) Defendant Ramadan is a volunteer imam who ministers at CCDC and consulted on the food provided to Muslim detainees during Ramadan 2016. (ECF Nos. 59-5, 57-2 at 2-5.) Defendant Garvey is a corrections officer who told Plaintiff that he was aware Plaintiff had been filing grievances for years related to CCDC's treatment of Islam, and told Plaintiff and other detainees that they were not allowed to prepare or have food in their cells during Ramadan, and that he would report them if he saw them eating food during daylight hours during Ramadan. (ECF No. 59-13 at 4-5.) Defendant Brown is a corrections officer who served as the Kitchen Liaison Officer during Ramadan 2016, and who coordinated the delivery of food to Plaintiff and other Muslim detainees during Ramadan 2016, responded to Plaintiff's grievances, and spoke with Plaintiff about Plaintiff's concerns regarding Ramadan 2016. (ECF No. 59-9.) Defendant Sheriff Lombardo is in charge of CCDC, and Plaintiff attempted to submit at least one grievance to him. (ECF No. 57-2 at 2.)

---

[4]The Court dismissed Plaintiff's claims against Peggy Martinez, the Las Vegas Metropolitan Police Department Detention Services Division, and the State of Nevada. (ECF No. 4 at 11.)

4

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.   DISCUSSION**

Both Plaintiff's response to Defendants' Motion, and the parties' supplemental briefs, make clear that the Court either cannot or does not need to address some of the parties' arguments in ruling on the Motion. Thus, the Court will address those issues before moving on to analyze Defendants' Motion as regards Plaintiff's claims, including Defendants personal participation and qualified immunity arguments.

**A.   Issues No Longer In Dispute**

The parties agree that any claims based on Plaintiff's allegations regarding prayer rugs have been resolved because Muslim detainees at CCDC are now allowed a third towel per week to use as a prayer rug. (ECF Nos. 57 at 10, 59 at 3-4, 4 n.1.) Thus, the Court will dismiss any claims based on those allegations as moot. In addition, Plaintiff agrees that Defendant Sheriff Lombardo properly invoked the personal participation defense. (ECF No. 59 at 18-19.) The Court will therefore dismiss Plaintiff's claims against Sheriff Lombardo. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.") (citation omitted).

**B.   Preclusive Effect of Earlier-Filed Case**

After Defendants moved for summary judgment (ECF No. 57), the Court ordered supplemental briefing on the impact of the 1458 Case on this case. (ECF Nos. 66 (order), 67, 68 (briefing).) Plaintiff argues in pertinent part that the 1458 Case has a limited impact because the 1458 Case only addressed the allegation that CCDC's designation of Islam as a program resulted in a screening delay, and did not address Plaintiff's allegation that CCDC's designation of Islam as a program means that Muslim detainees can be punished

1  for missing a Jumu'ah. (ECF No. 67.) Defendants argue that the judgment entered in Defendant Polley's favor as to Plaintiff's First Amendment free exercise claim and Fourteenth Amendment equal protection claim—both on qualified immunity grounds—in the 1458 Case should be given claim preclusive effect, barring those claims in this case. (ECF No. 68.) The Court agrees with Defendant.

"Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988) (citations and quotation marks omitted). It "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* (citation omitted). Claim preclusion "is motivated primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined." *Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir. 1993) (citation omitted).

Claim preclusion applies when there is: "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Regarding privity, "when two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." *Nordhorn v. Ladish Co.*, 9 F.3d 1402, 1405 (9th Cir. 1993). As to whether the claims are the same, courts in the Ninth Circuit consider the following factors: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Id.* (citation omitted). But because these factors are "tools of analysis," not requirements, the Court can hold a

second claim barred by claim preclusion "solely on the ground that it arose out of the 'same transactional nucleus of facts' as the original suit[.]" *Karr*, 994 F.2d at 1430.

Plaintiff's First Amendment free exercise of religion claim, and Fourteenth Amendment equal protection claim—both based on CCDC's designation of Islam as a program, rather than a religion—are barred under the claim preclusion doctrine. To start, there is an identity of claims between this case and the 1458 Case. Both cases arose out of the same transactional nucleus of facts: they both challenge CCDC's designation of Islam as a 'program,' instead of a 'religion,' and allege harm to Plaintiff while detained at CCDC flowing from this distinction. (ECF No. 4 at 7, 9.) *See also, e.g.*, *Howard v. Polley*, 2:15-cv-01458-APG-VCF, ECF No. 118 at 1-2 (D. Nev. Feb. 2, 2019). While Plaintiff is correct to highlight that this case focuses more on the punishment aspect of CCDC's decision to designate Islam as a program, the punishment aspect of that decision was also at issue in the 1458 Case. *See id.*, ECF No. 115 at 12 ("First, he must define the right at issue, going beyond general statements of constitutional principles (again, is it the fact that Muslims must be screened while Christians are not, is it that Muslims must wait to attend services while Christians do no, is it that Muslims face punishment for not attending services while Christians do not, or some combination of these issues?).").[5] In addition, both suits involve infringement of the same rights, because Plaintiff alleged violation of both his First Amendment free exercise of religion and Fourteenth Amendment equal protection rights in both cases. Further, the ultimate outcome of the 1458 Case was that Judge Gordon found Defendant Polley was entitled to qualified immunity as to both of these claims, so her interest in avoiding liability as established by the 1458 Case would

---

[5]The Court's finding here would not change even if Plaintiff had not highlighted the punishment aspect of CCDC's designation of Islam as a program in the 1458 Case because "res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action." *Karr*, 994 F.2d at 1430 (citation omitted). The same goes for Plaintiff's allegations in this case that he received inadequate food during Ramadan as regards his First Amendment free exercise and Fourteenth Amendment equal protection claims. But even Defendants argue that Plaintiff's Eighth Amendment claim regarding inadequate food during Ramadan is not precluded (ECF No. 68 at 3-4), and the Court agrees, so the Court finds that only the claims discussed in this section are precluded.

be impaired were the Court to allow these claims to proceed in this case. *See id.* ECF Nos. 118, 124, 125. Thus, there is an identify of claims.

Second, the 1458 Case resolved with a final judgment on the merits. *See id.* ECF No. 125 (corresponding to a final judgment that Defendant Polley was entitled to qualified immunity as to Plaintiff's free exercise of religion claim (ECF No. 118) and equal protection claim (ECF No. 124) based on CCDC's designation of Islam as a program).

The third element of privity is also satisfied here. Defendant Polley was or is a defendant in both cases, while the remaining Defendants in this case were not defendants in the 1458 Case. However, "when two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." *Nordhorn*, 9 F.3d at 1405. Polley, in the first case, was virtually a representative of the other Defendants in this case. In both cases, Plaintiff challenges CCDC's policy by suing individuals who work there under 42 U.S.C. § 1983. Thus, all individual Defendants in both cases stand in to represent the official policy of CCDC, which designates Islam as a program instead of a religion. That means Polley was virtually their representative in the 1458 Case. Thus, while some Defendants in this case were not party to the 1458 Case, the privity requirement is satisfied here.[6]

In sum, all three claim preclusion requirements are satisfied. Plaintiff is therefore precluded from asserting his First Amendment religious free exercise claim and his Fourteenth Amendment equal protection claim. That leaves two of Plaintiff's claims, which the Court will address below.

### C.     First Amendment Retaliation Claim

Defendants argue they are entitled to summary judgment because Plaintiff has no evidence of causation—that adverse actions were taken against him in retaliation for filing grievances or filing lawsuits. (ECF No. 57 at 11-12.) Plaintiff counters that there is sufficient

---

[6] In addition, while irrelevant to the inquiry, Plaintiff and Defendants in both cases have the same counsel.

evidence to raise a genuine issue of material fact on this claim, pointing to evidence of protected activity Plaintiff engaged in, and adverse actions taken against him and other Muslim detainees at CCDC. (ECF No. 59 at 12-14.) The Court agrees with Defendants. Plaintiff has not proffered any evidence of a causal link showing that Defendants took adverse actions against Plaintiff because he filed lawsuits and grievances.

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Id.* "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *See id.* at 568-69. "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was 'the 'substantial' or 'motivating' factor behind the defendant's conduct.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

Here, Plaintiff has not. Said otherwise, Defendant is entitled to summary judgment on this claim because Plaintiff has not proffered any evidence that he was subject to any adverse actions because of his protected conduct. *See id.* To start, there is no dispute that Plaintiff engaged in protected conduct. This is at least his third lawsuit against Defendant Polley, and he submitted numerous grievances while at CCDC. (ECF No. 59 at 12-13.) Plaintiff has also identified four adverse actions. (*Id.* at 13-14.) But Plaintiff has presented

no evidence tending to show a causal nexus between this protected conduct and the adverse actions he allegedly suffered.

The Court briefly addresses the four adverse actions Plaintiff points to in opposing Defendants' Motion as to this claim. But the Court notes at the outset that each of the four actions lacks crucial evidence as to the causal connection—the link indicating that Defendants took these actions because Plaintiff filed lawsuits and grievances. Plaintiff first argues that Defendant Polley refused to address his concerns about the Ramadan 2016 menu by increasing the amount of food provided in the evening sack meals. (*Id.* at 13.) But Plaintiff offers no evidence tending to show she did so because he had filed lawsuits or grievances.[7] Second, Plaintiff argues that Defendant Brown told him and other Muslim detainees who complained they were being given insufficient food to break their fast in the evening that they were required to give up something to participate in Ramadan. (*Id.*) But Plaintiff again offers no evidence or argument tending to show Brown said this because Plaintiff filed lawsuits and grievances.[8] The same goes for Plaintiff's argument that Defendant Ramadan told Plaintiff he would look into the Ramadan food issue, but did not. (*Id.*)

The allegation that gets the closest to creating an issue of material fact—but does not—is Plaintiff's assertion based on Defendant Garvey telling Plaintiff he was aware of Plaintiff's multiple grievances, and general threat to report any Muslim detainees he saw eating during Ramadan during the day. (*Id.*) It gets close because Garvey admitted he was aware Plaintiff had filed grievances, and later made a threat. (ECF No. 59-13 at 3-4.) But it does not because there is no evidence that Garvey had any control over the Ramadan menu or ability to change it. Similarly, there is no evidence that Garvey could

---

[7] The fact that the Ramadan Sack Plan applied to all Muslims at CCDC in 2016 also weighs against the inference Plaintiff would like the Court to draw—that it was implemented to retaliate against Plaintiff—because it negatively impacted 71 other people. (ECF No. 57-8 at 8.)

[8] This comment too was directed at other people besides Plaintiff, which undermines Plaintiff's contention that Brown was specifically interested in retaliating against Plaintiff. (ECF No. 57-8 at 20.)

11

influence or change the "rules" that applied to Ramadan. Thus, there is no evidence that Garvey could do anything to retaliate against Plaintiff other than reporting him for a rule violation, if Plaintiff committed one. And there is also no evidence Plaintiff broke the rule he puts at issue here—by eating during the day. Further, Garvey's threat was issued to other people besides Plaintiff, which also renders unreasonable the inference that he made the threat to retaliate against Plaintiff. *See, e.g.*, *Anderson*, 477 U.S. at 248-51 (standing generally for the proposition that the Court is only required to draw reasonable inferences in the nonmoving party's favor). Plaintiff has failed to proffer any evidence that Garvey sought to retaliate against him for filing lawsuits and grievances in the context of Ramadan 2016.

In sum, the Court will grant summary judgment to Defendants on Plaintiff's First Amendment retaliation claim because Plaintiff fails to proffer any evidence that "his protected conduct was 'the 'substantial' or 'motivating' factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271.

### D. Eighth Amendment Conditions of Confinement Claim

But the Court is unpersuaded Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim based on inadequate food during Ramadan 2016. Defendants argue they have presented evidence that the food served to Plaintiff during Ramadan was adequate, and Plaintiff has failed to come forward with any evidence to the contrary beyond his own, uncorroborated statements that the Ramadan sack meal he was served contained insufficient calories to maintain health. (ECF No. 57 at 14.) Plaintiff counters he has presented sufficient evidence of both the objective and subjective components of his Eighth Amendment claim to survive summary judgment. (ECF No. 59 at 14.) Plaintiff further points out both that Defendants only presented evidence regarding the caloric and nutritional adequacy of the Ramadan sack meals based on their understanding of what was provided, not any scientific or objective evidence, and that

CCDC's Ramadan Sack Plan conflicts with the Ramadan food policy otherwise outlined by CCDC's foodservice vendor, Aramark. (*Id.* at 10.) The Court agrees with Plaintiff.

Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). However, "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id.*

"Establishing a violation of the Eighth Amendment requires a two-part showing." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009). Plaintiff must first objectively show that he was deprived of something sufficiently serious such that it results in the denial of the "minimal civilized measure of life's necessities." *Id.* (citation omitted). For example, a denial of 16 meals in a 23 day period was found to be sufficiently serious. *Id.* at 812-13. Plaintiff must "then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Id.* at 812. "To establish a prison official's deliberate indifference, an inmate must show that the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the risk." *Id.* at 814.

Drawing all reasonable inferences in his favor as the Court must at summary judgment, the Court finds that Plaintiff proffers sufficient evidence to create genuine issues of material fact as to both the objective and subjective elements of this claim. As to the objective prong, Plaintiff proffers essentially two types of evidence: his own testimony and apparent conflicts between CCDC's policies. Regarding the former, Plaintiff offers unrebutted testimony that the food he was served at CCDC was inadequate for him to maintain his health—he testified that the lack of calories put him at risk of his blood

pressure medication burning a hole in his stomach, and caused him to withdraw from the Ramadan fast before it concluded for the first time in his life. (ECF Nos. 5 at 8-9, 59-2 at 2.) In response, Defendants present evidence merely stating that they understood Plaintiff and the other 71 detainees who participated in Ramadan 2016 received adequate calories—about 2800 per day. (ECF No. 57-8 at 13, 19, 29.) But the Aramark policy document proffered by Plaintiff says the "Ramadan Diet" provides between 2500-2650 calories a day. (ECF No. 59-11 at 11.) Defendants also say Plaintiff received two sack lunches, or the equivalent, every night (ECF No. 57-8 at 13), but Plaintiff says he did not (ECF No. 59-2 at 2). In addition, Defendant Ramadan both said that he did not know how many calories were contained in the meals detainees participating in Ramadan 2016 were given, but also says it is his understanding they received the same number of calories as other, non-fasting detainees. (ECF No. 57-8 at 27, 29.) Considering all of this evidence together, none of it rebuts Plaintiff's testimony that the food he was provided during Ramadan 2016 was inadequate for him to maintain his health.

Further, and especially drawing reasonable inferences in Plaintiff's favor, none of this evidence allows the Court to say with certainty how many calories detainees who participated in Ramadan 2016 received, or whether the amount and type of food they received in their evening sack meals was adequate to maintain health.

The Court also finds persuasive Plaintiff's reliance on the apparent conflict between the policies governing the food CCDC served detainees during Ramadan 2016 in finding that a genuine dispute of material fact precludes summary judgment on Plaintiff's Eighth Amendment claim. Defendants generally testify that Aramark is responsible for all food service at CCDC. (*See, e.g.*, *id.* at 6, 7, 12, 14, 19.) As Plaintiff points out (ECF No. 59 at 9-10), the "Ramadan Sack Lunch Plan" (ECF No. 59-11 at 2, 20) does not appear to satisfy the recommendations for Ramadan food service otherwise set out in Aramark's proposal to CCDC regarding food service (*id.* at 15 (providing that the evening meal be a complete meal, and specifying that it should include elements of the breakfast, lunch, and dinner

1 meals otherwise served at the facility that day)). This inconsistency contributes to the
2 Court's inability at this stage to determine whether the evening meal provided at CCDC
3 during Ramadan 2016 was adequate to maintain health, as the Eighth Amendment
4 requires. *See LeMaire*, 12 F.3d at 1456 (stating that food need only be adequate to
5 maintain health to satisfy the Eighth Amendment). Aramark's recommendations appear
6 geared towards providing food adequate to maintain health, but the Ramadan Sack Lunch
7 Plan does not implement those recommendations—leading the Court to draw the
8 reasonable inference that the Ramadan Sack Lunch Plan does not provide food adequate
9 to maintain health.[9]

10 Moving to the subjective prong, *see Foster*, 554 F.3d at 812, the evidence
11 establishes that Defendants knew Plaintiff and others felt they were getting insufficient
12 calories during Ramadan 2016, but never took any action to modify the Ramadan Sack
13 Plan. To start, Plaintiff sent grievances directed to Defendant Sheriff Lombardo and
14 Defendant Brown, which Defendant Polley responded to, complaining he was getting
15 insufficient calories during Ramadan 2016. (ECF No. 57-2.) The responses to these
16 grievances state that Plaintiff was receiving the equivalent of a double sack lunch
17 containing 2800 calories, but never offer to give Plaintiff more food. (*Id.*) In addition, both
18 Defendant Brown and Defendant Ramadan stated they were aware of at least one other
19 detainee beyond Plaintiff who complained about the caloric content of the meals provided
20 during Ramadan 2016. (ECF No. 57-8 at 20, 35.) Thus, the evidence establishes that at
21 least some CCDC employees knew of the allegations that Muslim detainees were
22 receiving inadequate food during Ramadan, and decided not to give them more food.
23 Again drawing all reasonable inferences in Plaintiff's favor as the nonmoving party, a

---

[9] In addition, CCDC's Standard Operating Procedure Regarding Religious Diets provides that "food services will provide a meal that is nutritionally equivalent to the last meal missed upon the breaking of the fast and in accordance with the adherents' religions tenants." (ECF No. 57-4 at 5.) The Court is unconvinced the evening sack meal is nutritionally equivalent to the hot dinner other detainees would be served. This additional conflict between CCDC's stated policy and the Ramadan Sack Lunch plan further supports the inference that the sack dinners may be inadequate to maintain health.

15

rational juror could find that Defendants knew of a risk of a threat to Muslim detainees' health and chose to disregard it. *See Foster*, 554 F.3d at 814 ("To establish a prison official's deliberate indifference, an inmate must show that the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the risk.").

In sum, having considered both the objective and subjective prongs of the governing Eighth Amendment analysis, the Court finds genuine disputes of material fact preclude summary judgment on Plaintiff's claim that Muslim detainees were provided with insufficient calories to maintain health at CCDC during Ramadan 2016. Those disputes center on how many calories Ramadan participants were provided in their evening sack meals, and whether those meals were adequate to maintain health, which comprises both a caloric and a nutritional component.

### 1. Personal Participation

Defendants also argue they are nonetheless entitled to summary judgment on Plaintiff's Eighth Amendment claim because none of them personally participated in the alleged constitutional violations underlying that claim. (ECF No. 57 at 16.) "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). Plaintiff responds that all Defendants except for Sheriff Lombardo are not entitled to this defense because they personally participated in Plaintiff's alleged constitutional rights violations. (ECF No. 59 at 18-19.) The Court agrees with Plaintiff.

Defendants Polley, Ramadan, Brown, and Garvey all personally participated in the acts or omissions giving rise to Plaintiff's Eighth Amendment Claim. Defendant Polley responded to Plaintiff's grievances regarding Ramadan 2016 and indicated in her responses that she verified the sack dinners contained sufficient caloric content. (ECF No. 57-2 at 2.) Defendant Brown also testified that Polley is in charge of the list of detainees who would like to participate in Ramadan. (ECF No. 57-8 at 18-19.) Defendant Brown is responsible for coordinating the delivery of the sack dinners with Defendant Polley and

Aramark during Ramadan. (*Id.*) Plaintiff also complained to Brown about the insufficient sack meals, and Brown told Plaintiff he was required to give up something to participate in Ramadan. (ECF No. 59-9 at 4, 14-15.) Garvey also knew that Plaintiff had filed grievances regarding the caloric content of the sack meals, and was responsible for monitoring Plaintiff and other Muslim detainees' participation in Ramadan 2016—including by telling them he would report them if he saw them eating during the day. (ECF No. 59-13 at 4-5.) Defendant Ramadan consulted with other Defendants regarding Ramadan 2016 at CCDC, including the food provided to Plaintiff and others, and was aware of grievances by other detainees regarding the food provided during Ramadan. (ECF No. 57-8 at 13, 14, 20-22, 35.) Therefore, Defendants Polley, Brown, Garvey, and Ramadan are not entitled to summary judgment on Plaintiff's Eighth Amendment claim based on lack of personal participation.

### 2. Qualified Immunity

Defendants argue they are entitled to qualified immunity because they were not on notice of Plaintiff's alleged constitutional violations and because Plaintiff has presented "absolutely no reliable evidence to support his allegations." (ECF No. 57 at 19.) Plaintiff responds in pertinent part that his right to receive adequate food to maintain health was clearly established, so much so that Defendants were on notice of that right. (ECF No. 59 at 20-21.) The Court again agrees with Plaintiff.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Generally, courts apply a two-step analysis to determine whether qualified immunity applies to bar certain claims. First, a court decides whether the facts *as alleged by the plaintiff* make out a violation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (emphasis added), *holding modified by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, the Court decides whether the right

at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The burden to establish that a right was "clearly established" at the time of the alleged misconduct rests with the plaintiff. *See Greene v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009), *vacated on other grounds as noted in Greene v. Camreta*, 661 F.3d 1201 (9th Cir. 2011). If there is no constitutional violation, the inquiry ends, and the officer is entitled to qualified immunity. *See Katz*, 533 U.S. at 201.

Defendants are not entitled to qualified immunity on Plaintiff's Eighth Amendment claim. "There is no question that an inmate's Eighth Amendment right to adequate food is clearly established." *Foster*, 554 F.3d at 815 (citation omitted). "The decisions from this Circuit and others alerting prison officials of their obligations to provide inmates with nutritionally adequate meals on a regular basis should have given [CCDC staff] sufficient notice of the contours of the Eighth Amendment right." *Id.* at 816. In addition, Plaintiff submitted grievances that the evening sack meals provided during Ramadan 2016 were inadequate in violation of his constitutional rights, so Defendants' argument they were not on notice of his allegations is not credible. (ECF No. 57-2.) As to Defendants' argument that Plaintiff presented no evidence to support his Eighth Amendment claim, the Court refers to its discussion *supra* in Section IV.D., where the Court discusses the evidence Plaintiff proffered in support of this claim. In sum, the Court rejects Defendants' qualified immunity argument.

The Court will therefore deny Defendant's Motion as to Plaintiff's Eighth Amendment Claim.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines

that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 57) is granted in part, and denied in part. Summary judgment is granted to Defendants on Plaintiff's First Amendment retaliation claim, First Amendment free exercise of religion claim, and Fourteenth Amendment equal protection claim, but denied on Plaintiff's Eighth Amendment conditions of confinement claim.

It is further ordered that any claims based on Plaintiff's allegations regarding prayer rugs are dismissed as moot.

It is further ordered that Defendant Sheriff Lombardo is dismissed from this case.

DATED THIS 26th day of July 2019.

MIRANDA M. DU  
UNITED STATES DISTRICT JUDGE